

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

ENTERED
03/09/2016

IN RE )
)
CHARLES STEINKUEHLER, JR. and ) CASE NO. 14-34808-H3-13
THERESA A. STEINKUEHLER, )
)
      Debtors )
)

## MEMORANDUM OPINION

Came on for hearing the Chapter 13 Fee Application of Debtor's Counsel (Docket No. 65) filed by Reese W. Baker. After consideration of the "Chapter 13 Request for Hearing to Deny Application of Debtor's Counsel" (Docket No. 67) filed by Charles and Theresa Steinkuehler ("Debtors"), the pleadings, evidence, testimony and argument of the parties, the court makes the following Findings of Fact and Conclusions of Law granting in part and denying in part the Fee Application. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

## FINDINGS OF FACT

Reese W. Baker ("Applicant") filed this Chapter 13 Fee Application requesting fees of $10,418.50 and expenses of $636.10 for a total of $11,054.60 for his representation of Debtors from March 31, 2014 to August 31, 2015. Docket No. 65. Debtors paid $2,100.00 directly to Applicant. Although a balance remains of

$8,954.60, Applicant is only seeking approval of fees in the amount of $2,911, which is the amount being held by the Chapter 13 Trustee. Applicant charges $365 per hour and the other attorneys he works with charge between $250 and $310 per hour. Paralegals are billed per hour between $100 and $150. The application reflects 18.6 hours of attorney time and 43.1 hours of paralegal time were expended on this case.

Debtors, appearing *pro se*, filed an objection to the fee application on the basis that counsel mishandled their case, that counsel failed to appear at the creditors' meeting and other hearings, that hearings were continued by counsel without advising Debtors, that counsel misled Debtors as to the calculation and total amount of fees to be charged, and that counsel failed to adequately communicate with Debtors.

This case was originally filed as a chapter 7 proceeding on August 29, 2014. Theresa Steinkuehler, Debtor, testified that, prior to the petition being filed, she and her husband consulted with Patrick Gilpin of Applicant's firm and discussed whether Debtors should file a chapter 7 or a chapter 13 bankruptcy proceeding. She testified that she and her husband advised Gilpin that they preferred to file a chapter 13 proceeding. Debtors were told that they qualified for filing a chapter 7 petition. Debtors were advised that the fees to be charged to file a chapter 7 petition was $2,100 and that fees for a chapter 13 filing was

2

$3,500.

Debtor testified that Applicant was paid $2,100 prepetition in connection with filing the chapter 7 petition. Payment of this amount is verified by The Disclosure of Compensation filed by Applicant. Docket No. 6. Debtor testified that she and her husband gave all financial information to Applicant, including an estimate of expenses Debtors incurred due to the housing arrangement they had with Theresa Steinkuehler's mother. Debtors lived in a mobile home on property that was owned by Theresa Steinkuehler's mother. In lieu of paying rent, Debtors were responsible for paying expenses related to maintaining the property and making needed upgrades and repairs. The housing arrangement was not in writing. Debtor testified that she and her husband were assured that they need not obtain a lease agreement to verify the arrangement. Debtor also testified that her husband had a large amount of unsecured debt from credit card accounts that were incurred prior to their marriage.

Debtors appeared at the chapter 7 creditors' meeting on October 9, 2014 but Applicant was not present. Upon calling Applicant's office, Debtors were assured Patrick Gilpin or Reese Baker would arrive. A representative from the United States Trustee's office was present to inquire about the unsecured debt, and what appeared to be excessive expenses relating to home maintenance costs, but was unable to wait until Debtors' counsel

arrived.  Thereafter, a dismissal motion was filed by the United States Trustee based upon a presumption that the chapter 7 filing was an abuse.

Debtor, Theresa Steinkuehler, testified that she and her husband were informed by Applicant that if the case was converted to a chapter 13 bankruptcy, the fees would only increase by $1,400 (for a total of $3,500) and that this additional amount would be rolled into the chapter 13 plan payments to be distributed by the chapter 13 trustee.  Debtors were advised by Applicant that Debtors would not have to pay any more "out of pocket" payments to Applicant.  Applicant also advised that no additional monies would be due Applicant in the event the plan was not confirmed or that Debtors decided not to continue in the chapter 13 case. Steinkuehler testified that it was her understanding that Applicant would receive no other fees.  Testimony of Theresa Steinkuehler.

The case was converted to a chapter 13 proceeding on December 30, 2014, as a result of the allegations of abuse contained in the United States Trustee's motion.  Despite five hearings on confirmation, no plan was ever confirmed and the case was ultimately dismissed on August 27, 2015.

The court notes that prepetition, on August 20, 2014, Debtors signed a 20 page form promulgated by Applicant and entitled "Rights, Duties, Fees, and Disclosures for Bankruptcy."  Baker Exhibit No. 1.  It includes information related to determining the

4

fees to be charged and states that Applicant is entitled to reasonable compensation for all work performed. Although it states that the fees will be determined by the amount of time needed to complete the case, it also states that the Applicant may elect, at its discretion, to submit an application for a fixed fee from the court. Despite the indication on the form that time records are kept for each case, determining the amount to be charged appears to be left to the discretion of the Applicant.

Steinkuehler testified that Debtors were never informed that fees would be assessed at an hourly rate. She testified that Applicant told her and her husband that there would be no more up front costs to be paid by Debtors. Steinkuehler also claimed that phone calls to Applicant were not returned or were not timely returned. Steinkuehler complained that more time was spent by Debtors' waiting for Applicant, either to appear in court or to confer in Applicant's office, than the time spent with Applicant. According to Steinkuehler, the majority of Debtors' case was being handled by multiple office personnel (paralegals and staff) who were not familiar with Debtors' case or the current status of the case. Steinhuehler testified that this resulted in multiple miscommunications and misinformation.

It appears that a large part of the fees were generated in conjunction with substantiating the expenses relating to the home maintenance costs and forwarding this information to the

Chapter 13 Trustee.  In the Fee Application, Applicant claims that he was unable to obtain the necessary information and approval from the client to submit the requested information.  Steinkuehler testified that Debtors advised Applicant of the unusual housing situation and payment of the maintenance expenses at the initial client consultation meeting.  She testified that Debtors submitted any and all documents and information requested by Applicant.  She testified that Applicant was already in possession of all of the information requested by the Chapter 13 Trustee at the time the Trustee made his request.  According to Steinkuehler, she and her husband were frustrated by the way their case was being handled.  Debtors' initial confirmation hearing was continued five times from March 2015 until the dismissal of the case in August 2015, without adequate explanation for four of the continuances.[1]  The court finds Steinkuehler to be credible.

The court finds that the information to substantiate Debtors' expenses was not forwarded to the Chapter 13 Trustee by counsel.  It is not unusual that expenses have to be substantiated.  The court finds that Applicant did not take the necessary steps to resolve the Trustee's concerns in an expedient and efficient manner.  This resulted in additional unnecessary time being spent

---

[1] The initial confirmation hearing was set on March 26, 2014 (Docket No. 24) and thereafter, it was continued to April 30, 2015 (Docket No. 37), May 28, 2015 (Docket No. 41), June 25, 2015 (Docket No. 50), July 30, 2015 (Docket No. 52), and August 27, 2015 (Docket No. 54).  The Debtors initiated one of the continuances due to health issues.  The reason for the other continuances was not adequately explained by Applicant according to the Debtors.

on client consultations, dismissal motions and hearings and confirmation hearings.

The court has reviewed the time records the Applicant submitted in support of its fee application. The court finds that some of the fees incurred for the services rendered are entitled to compensation. Despite the fact that no plan was ever confirmed, the Applicant did perform some standard services in the instant case which the court finds compensable. Applicant prepared the schedules in the chapter 7 and chapter 13 cases. Applicant or an attorney from his office appeared, albeit late, at the creditors' meeting and at hearings on confirmation. The court finds that Applicant's actions and inactions were a major cause of the need for the additional hearings.

After consideration of the Debtors' objections, the testimony of Reese Baker and Theresa Steinkuehler, and the description of the services rendered and the results obtained, the court reduces the requested fees of the Applicant. The court awards attorneys' fees and expenses in the total amount of $3,100, $2,100 of which Debtors have already paid directly to Applicant. Of the money held by the Chapter 13 Trustee, only $1,000 is to be paid to Applicant and the remaining funds on hand are to be returned to the Debtors.

CONCLUSIONS OF LAW

Section 330(a)(4)(B) of the Bankruptcy Code provides that,

> [i]n a chapter 12 or chapter 13 case in which the debtor is an individual, the court may allow reasonable compensation to the debtor's attorney for representing the interests of the debtor in connection with the bankruptcy case based on a consideration of the benefit and necessity of such services to the debtor and the other factors set forth in this section.

The other factors set forth in § 330(a)(3) include:

> [T]he nature, the extent, and the value of such services, taking into account all relevant factors, including (A) the time spent on such services; (B) the rates for such services; (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title; (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and (E) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

Chapter 13 debtor's attorneys may seek attorneys' fees on a fixed fee basis or a lodestar basis. Bankruptcy Local Rule 2016-1(d). There was no fixed fee agreement filed in the instant case. Thus, the instant application will be considered under the lodestar provisions. The court computes the lodestar by multiplying the number of hours an attorney would reasonably spend for the same type of work by the prevailing hourly rate in the community. After determining the lodestar amount, the court may adjust the lodestar up or down in accordance with the relevant factors not already

included in the lodestar.[2] *See Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *Shipes v. Trinity Industries*, 987 F.2d 311, 319-20 (5th Cir.) *cert. denied*, 510 U.S. 991, 114 S.Ct. 548, 126 L.Ed.2d 450 (1993); *In re Cahill*, 428 F.3d 536 (5th Cir. 2005). Professional services must be of value to the administration of the estate or of benefit to the estate in order to be compensable. *In re Chapel Gate Apartments, Ltd.*, 64 B.R. 569 (Bankr. N.D. Tex. 1986).

Section 329(a) of the Bankruptcy Code requires that any attorney representing a debtor file "a statement of the compensation paid or agreed to be paid, if such payment or agreement was made after one year before the date of the filing of the petition, for services rendered or to be rendered in contemplation of or in connection with the case by such attorney, and the source of such compensation." 11 U.S.C. § 329(a).

The disclosure requirements are imposed because, *inter alia*, there are instances in which debtors will not object to their attorney's fee applications because they may be in no position to make an objective judgment as to the value of the legal services

---

[2] The Johnson factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

involved, and may lack the inclination to object to whatever fee is requested. *Halbert v. Yousif*, 225 B.R. 336 (E.D. Mich. 1998).

The bankruptcy court has an independent duty to review fee applications, notwithstanding the absence of objections by the United States trustee, creditors, or any other interested party. *In re Busy Beaver Building Centers*, 19 F.3d 833 (3rd Cir. 1994). *See In re Nucorp Energy, Inc.*, 764 F.2d 655, 657 n. 1 (9th Cir. 1985); *In re Wilde Horse Enter., Inc.*, 136 B.R. 830, 839-40 (Bankr. C.D. Cal. 1991); 11 U.S.C. § 330(a)(1); Bankruptcy Rule 2016.

The court should not have to guess or spend excessive court time to justify a fee for an applicant who has not done so for himself or herself. The court is not required to audit time records in order to attempt to determine what was reasonable, what was necessary, and what the result was for each endeavor. *In re Chicago Lutheran Hospital Association*, 89 B.R. 719, 736 (Bankr. N.D. Ill. 1988). Rather than implementing reductions on a "line by line" basis, and without expending extensive court resources to track down every entry, as well as making a line by line disallowance of those entries that are insufficiently substantiated, one court has taken a "rough justice" approach. *See In re Bank of New England Corp.*, 134 B.R. 450 (Bankr. E.D.Mass. 1991).

Based upon the above findings and conclusions, the court will enter a separate Judgment in conjunction with this Memorandum

Opinion denying in part and granting in part the requested fees.

Signed at Houston, Texas on this 8th day of March, 2016.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE